Toledo Metro Federal Credit Union, Appellant, *v.*
Ted Papenhagen Oldsmobile, Inc., Appellee.

(No. L-77-201—Decided March 17, 1978.)

*Mr. Richard E. O'Brien,* for appellant.
*Messrs. Shumaker, Loop & Kendrick,* and *Mr. John G. Maxa,* for appellee.

Connors, J. This is an appeal from a judgment entered in the Municipal Court of Sylvania, dismissing the second count of plaintiff's two-count amended complaint.

Plaintiff, Toledo Metro Federal Credit Union, is a federally chartered credit union which provides various financial services to employees of the city of Toledo. In September 1975, plaintiff loaned a sum of money to Allen E. Stowers, one of its members. Plaintiff secured that loan by filing a security lien on a 1973 Oldsmobile, the automobile purchased by Mr. Stowers with the aforementioned loan.

When Mr. Stowers became delinquent in his payments,

the plaintiff credit union attempted to repossess the auto. However, the vehicle was not located until November 1976, when plaintiff received notice that it was in the possession of defendant Papenhagen Oldsmobile, Inc.

Defendant had attempted to sell the auto in order to recoup the amount of a repair bill which Allen Stowers refused to pay. However, upon learning of plaintiff's secured lien, defendant contacted plaintiff.

After some disagreement between the parties, plaintiff filed an affidavit in replevin demanding possession of the auto. This action was not contested and plaintiff proceeded to take possession of the Oldsmobile.

In an amended two-count complaint filed in Sylvania Municipal Court, plaintiff alleged, *inter alia*, that defendant had replaced the Oldsmobile engine with a "junk" engine, and that this "switch" had rendered the repossessed auto inoperable and unmarketable. Plaintiff's second cause of action alleged a violation of the Ohio Consumer Sales Practices Act (R. C. 1345.01, *et seq.*).

Defendant filed a motion to dismiss plaintiff's second cause of action for failure to state a claim upon which relief could be granted. From a judgment entry granting the motion, plaintiff now appeals.

Plaintiff presents one assignment of error, to wit:

"Plaintiff-appellant herein avers that the Honorable Judge Erb of the Municipal Court of Sylvania erred in granting defendant-appellee's motion to dismiss plaintiff-appellant's second count of its complaint wherein it sought to include itself among those consumers protected by O. R. C. 1345, *Ohio Consumers Sales Practices Act.* Plaintiff-appellant contends that said dismissal is contrary to the intent and purpose of the Act."

R. C. 1345.01(A) states:

" 'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible, except those transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, or between attorneys or physicians and their clients or pa-

tients, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

Thus, in order to come within the protection of R. C. 1345.01, *et seq.* (Ohio Consumer Sales Practices Act), plaintiff must demonstrate that, at the time of the incident in question, it was an "individual" and was engaged in an activity, the purpose of which was "primarily personal, family or household."

A credit union is a corporation, organized for the purposes of promoting thrift among, and loaning money to, its members at comparatively low interest rates. R. C. 1733.-01; 15 Ohio Jurprudence 2d 237, Credit Unions, Section 2; *State, ex rel. Leach,* v. *Price* (1959), 168 Ohio St. 439. Clearly, plaintiff herein is a corporation.

The question of whether a corporation can properly be included within the definition of "individual" has been answered in a variety of ways. See 21 Words and Phrases (perm. ed.) 441-445; 52 Ohio Jurisprudence 2d 98, Telephones and Telegraphs, Section 52; R. C. 5747.01 (H).

To resolve the issue before this court—whether the Toledo Metro Federal Credit Union is an individual within the meaning of R. C. 1345.01 (A)—we turn to the legislation upon which R. C. 1345.01 *et seq.* is modeled.

The Uniform Consumer Sales Practices Act was approved by the National Conference of Commissioners on Uniform State Laws, and the American Bar Association, in 1970. It was amended the following year and similarly approved. This act represented "* * * an effort to crystallize the best elements of contemporary federal and state regulation of consumer sales practices in order to effectuate harmonization and coordination of federal and state regulation." (7 Uniform Laws Anno.—Bus. & Fin. [supp. 1977, at 306].)

Although it contains certain additions, alterations and omissions, the Ohio Consumer Sales Practices Act represents a substantial adoption of the uniform act. This similarity is particularly apparent when one compares the wording of the statute in ques-

tion (R. C. 1345.01 [A]) with that of the Uniform Consumer Sales Practices Act, Section 2(1). The pertinant section of the Ohio act has been quoted above. Section 2 (1) of the Uniform Act states:

" 'consumer transaction' means a sale, lease, assignment, award by chance, or other disposition of an item of goods, a service, or an intangible (except securities) to an individual for purposes that are primarily personal, family, or household, or that relate to a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged, or a solicitation by a supplier with respect to any of these dispositions * * *." (7 Uniform Laws Anno.—Bus. & Fin., *supra*, at 307.)

The Commissioner's Comment following Sec. 2(1) reads, in part:

"A consumer transaction typically involves a natural person who obtains or is solicited to obtain an item of goods, a service, or an intangible primarily for personal, family, or household purposes. Also included are certain analogous transactions in which a natural person obtains or is solicited to obtain a business opportunity in which he has not been previously engaged. * * * (7 Uniform Laws Anno.—Bus. & Fin., *supra*, at 308.)

It is apparent from this language that the drafters of the uniform act intended the word "individual" to mean a "natural person," and not a corporation.

While we recognize that it is not binding on this court, the above-quoted comment does represent the clearest indication of legislative intent available to us. Thus, we hold that, for purposes of R. C. 1345.01(A), the term "individual" means a natural person, and does not include a corporation. Since plaintiff Toledo Metro Federal Credit Union is a corporation, and not a natural person, it cannot be considered an individual within the meaning of R. C. 1345.01(A).

Further, we cannot agree with plaintiff's contention that it was engaged in a transaction for purposes primarily personal, family or household. Plaintiff was attempt-

ing to repossess its secured property following default by one of its members. Clearly, this action was undertaken primarily for the business-related purpose of protecting plaintiff's collateral.

We hold that the repossession of secured property by a credit union is not a transaction for purposes that are ''primarily personal, family or household'' within the meaning of R. C. 1345.01(A). Thus, the repossession which formed the basis for this appeal was not a consumer transaction as defined in R. C. 1345.01(A).

Plaintiff herein was not an individual, nor was its transaction undertaken for purposes that were primarily personal, family or household. Thus, plaintiff does not come within the scope of the Ohio Consumer Practices Act, and the trial court did not err in dismissing plaintiff's second cause of action.

Plaintiff's sole assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has been done the party complaining. The judgment of the Sylvania Municipal Court is affirmed.

*Judgment affirmed.*

BROWN and WILEY, JJ., concur.

WILEY, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.