**CLASSIC CAR CENTRE, INC.,**
Appellant–Defendant
Below,

v.

**HAIRE MACHINE CORPORATION,**
Appellee–Plaintiff Below.

No. 50A03–9012–CV–00559.

Court of Appeals of Indiana,
Third District.

Nov. 13, 1991.

Gary L. Calhoun, Gallucci, Hopkins & Theisen, P.C., Fort Wayne, for appellant.

Bradley J. Tandy, Jane L. Tibma, Rasor, Harris, Lemon & Reed, Warsaw, for appellee.

STATON, Judge.

Classic Car Centre, Inc. (Classic) appeals the trial court's denial of its motion to dismiss, raising the sole issue of whether the Deceptive Consumer Sales Act, Indiana Code 24–5–0.5–1 *et seq.*, provides protection to corporations as well as individual consumers.

We reverse.

On March 7, 1990, Haire Machine Corporation (Haire) filed a complaint alleging, *inter alia*, that Classic agreed in June of 1989 to restore a 1937 Packard V–12 automobile, and that a similar agreement was made with respect to a 1962 Bentley automobile. The complaint alleged that Classic had given estimates for the restoration of $3,500 on the Packard and $3,200 on the Bentley, and Haire had tendered deposits in those amounts to Classic. The complaint further alleged that the work on the Packard had substantially exceeded the original estimate and deposit and that Haire was eventually informed that restoration on the Bentley would cost approximately $54,-270.00. Count I of the complaint alleged breach of contract and Count II alleged violation of the Deceptive Consumer Sales Act (the Act).

Classic filed a motion to dismiss Count II, contending that the Act sought to protect only individuals, not corporations. The trial court denied Classic's motion to dismiss and it brought this interlocutory appeal.

Upon review of the denial of a motion to dismiss, we must determine whether the complaint is sufficient to state any valid claim. *Morton v. Merrillville Toyota* (1990), Ind.App., 562 N.E.2d 781, 782. In so doing, we view the complaint in the light most favorable to the plaintiff and with every inference drawn in his favor. *Id.*

Indiana Code 24–5–0.5–3(a)(12), upon which Haire bases Count II of its complaint, provides:

(a) The following acts or representations as to the subject matter of a consumer transaction, made either orally or in writing by a supplier, are deceptive acts:
\* \* \* \* \* \*

(12) That the replacement or repair constituting the subject of a consumer transaction can be made by the supplier for the estimate the supplier gives a customer for the replacement or repair, if the specified work is completed and:

(A) the cost exceeds the estimate by an amount equal to or greater than ten percent (10%) of the estimate;

(B) the supplier did not obtain written permission from the customer to authorize the supplier to complete the work even if the cost would exceed the amounts specified in clause (A);

(C) the total cost for services and parts for a single transaction is more than seven hundred fifty dollars ($750); and

(D) the supplier knew or reasonably should have known that the cost would exceed the estimate in the amounts specified in clause (A).

The clear language of the statute requires that the transaction complained of must have been a "consumer transaction." "Consumer transaction" is defined in section 2 of the Act:

(1) "Consumer transaction" means a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible, except securities and policies or contracts of insurance issued by corporations authorized to transact an insurance business under the laws of the state of Indiana, with or without an extension of credit, to an *individual* for purposes that are primarily personal, family, or household, or a solicitation to supply any of these things.

(Emphasis added). "Individual" is not defined in the Act, but is distinguished from a corporation:

(2) "Person" means an *individual, corporation,* the state of Indiana or its subdivisions or agencies, business trust, estate, trust, partnership, association, or cooperative or any other legal entity.

IC 24–5–0.5–2(2) (emphasis added). Thus, the term "individual" refers to a natural person.

There was no "consumer transaction" here, as the service on the automobiles was not performed for an individual. Thus, the trial court erred in denying Classic's motion to dismiss, as the complaint was insufficient to state any valid claim under the Act.

The Deceptive Consumer Sales Act borrows extensively from the Uniform Consumer Sales Practices Act. Several other states have statutes borrowing from or paralleling the Uniform Act. Ohio's similar act has been held not to provide protection to corporations. *Toledo Metro v. Ted Papenhagen Oldsmobile* (1978) 56 Ohio App.2d 218, 381 N.E.2d 1337.

Nonetheless, Haire argues that it is afforded relief under section 4 of the Act, which reads in pertinent part:

(a) a *person* relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act. The court may award reasonable attorney fees to the party that prevails in an action under this subsection. This subsection does not apply to a consumer transaction in real property, except for purchases of time shares and camping club memberships.

(Emphasis added). Haire argues that since a corporation is a "person," it was entitled to bring the action. This argument ignores that an action under the act requires a consumer transaction, which in turn requires an individual. Our conclusion is bolstered by the clear intent of the Act to protect the individual consumer from being taken advantage of in his dealings with "suppliers" for "purposes that are primarily personal, family, or household." IC 24–5–0.5–2. *See also* Uniform Consumer Sales Practices Act, comment to § 2, 7A U.L.A. 231, 235 ("A consumer transaction typically involves a natural person who obtains or is solicited to obtain an item of goods, a service, or an intangible primarily for personal, family, or household purposes"). Corporations are generally creatures of the business world and regularly participate in business transactions. Thus, legislators often find it unnecessary to grant protection

to corporations in the nature of that offered the individual consumer through consumer protection legislation. Despite an apparent ambiguity in the Act, we find that it was the intention of the legislature to exclude intercorporate transactions from the coverage of the Act.

The trial court's denial of Classic's Motion to Dismiss is reversed and this cause is remanded with instructions to grant a dismissal of Count II of the complaint.

HOFFMAN and RUCKER, JJ., concur.