JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Plaintiff-appellant, Dale Harwood, appeals from a common pleas court order granting summary judgment in favor of defendants-appellees, BPJ Investments Co., Inc. ("BPJ"), George Potz, Robert A. Krupiter, Krupiter Associates, Ira Kirsch, American Home Mortgage, and Patriot Land Title Agency, Ltd.[1] In his first four assignments of error, he asserts that the court erred by granting judgment for each of these defendants; his fifth assignment of error contends that his recovery is not barred by the economic loss doctrine. We find that there are no genuine issues of material fact and that each of these defendants was entitled to judgment as a matter of law. Accordingly, we affirm.
 Procedural History {¶ 2} The complaint in this case was originally filed on March 29, 2005, and was amended, with leave of court, on May 2, 2007. The amended complaint alleged that defendant Thomas Skliros sold land to defendants Mahoud Zayed and Layali Ibrahim, then entered into a contract with them to construct a new residence on this property. Zayed and Ibrahim attempted to procure financing for the construction through defendants American Home Mortgage and Peter Moran. They obtained an *Page 5 
appraisal from defendants Krupitzer and Krupitzer Associates in early 2002 for $982,000; later that year, Krupitzer valued the property at $1,100,000.
 {¶ 3} Zayed and Ibrahim informed Skliros that they were unable to obtain financing to purchase the home; Skliros placed a mechanic's lien on the property. Appellant's amended complaint urges that the lien did not represent the true amount of Skliros's financial interest in the property.
 {¶ 4} Zayed and Ibrahim, as well as Asher, Fared and Nadia Zayed (collectively, "the Zayeds"), asked defendant George Potz to sell the property. Potz solicited appellant to purchase the property and lease it back to the Zayeds with an option for the Zayeds to purchase it. The second Krupitzer appraisal was provided to appellant and to American Home Mortgage and its agents, Ira Kirsch and Peter Moran. American Home Mortgage obtained financing for appellant. The amended complaint claimed that Potz and Moran both knew that the Zayeds did not have the financial wherewithal to satisfy the lease obligations or to purchase the property, but failed to tell appellant.
 {¶ 5} The amended complaint asserts some twenty-two claims. As relevant to this appeal, appellant's amended complaint alleged that Potz and his company, BPJ Investments Co., negligently failed to disclose information pertinent to appellant's purchase of the property (Count III), and that Krupitzer and Krupitzer Associates breached a duty of care by providing him with an excessive appraisal (Count IV). Appellant further asserted that American Home Mortgage, Kirsch, and Moran negligently failed to disclose to him the Zayeds' lack of credit worthiness, and failed to *Page 6 
disclose liens on the property (Count V). Appellant complained that Patriot Land Title failed to disclose pertinent information to him and did not convey proper title to him (Count VI).
 {¶ 6} Appellant also asserted that Potz and BPJ made fraudulent representations to him regarding the value of the property and the ability of the Zayeds to make lease payments and purchase the property (Count XII). He claimed that all of the defendants engaged in a civil conspiracy to benefit themselves at appellant's expense (Count XIII), and engaged in deceptive trade practices by falsely representing the value of the property (Count XXI). He argued that Potz, Moran, Kirsch, and American Home Mortgage breached fiduciary duties to him as his agents (Counts XIX and XX). Finally, he alleged that Moran, Kirsch, and American Home Mortgage were unjustly enriched by the commissions they received on the mortgage they procured for appellant (Count XXII). He demanded punitive as well as compensatory damages.
 {¶ 7} Each of the appellees answered the amended complaint. They each further moved for summary judgment which the court granted, without opinion.
Facts
 {¶ 8} A single succinct statement of the material facts is virtually impossible given the number of parties and claims involved. Therefore, we will combine the discussion of material facts with our analysis of the legal issues.
 Law and Analysis *Page 7 {¶ 9} We review an order granting summary judgment de novo, applying the same standard the trial court used. "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v.Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369, 1998-Ohio-389.
 {¶ 10} Each assignment of error addresses appellant's claims against a separate defendant or group of defendants. Therefore, we will discuss the evidence relevant to each party in turn.
Krupitzer and Krupitzer Associates.
 {¶ 11} Appellant's first assignment of error contends that the court erred by granting summary judgment for appellees Krupitzer and Krupitzer Associates, who appraised the subject property for $1,100,000. Appellant complained that Krupitzer negligently provided him with an excessive appraisal, participated in a civil conspiracy, and engaged in deceptive trade practices.
 {¶ 12} The evidence attached to Krupitzer's motion for summary judgment showed that Krupitzer appraised the subject property on March 8, 2002 for $982,000. He prepared a second appraisal on October 7, 2002, and valued the property at $1,100,000. Both appraisals were prepared on behalf of American Home Mortgage in connection with a loan to "Fayed." Both contained the following "limiting condition": "The appraiser must provide his or her prior written consent before the lender/client *Page 8 
specified in the appraisal report can distribute the appraisal report (including conclusions about the property value * * *) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; * * *; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state * * *." By affidavit, Krupitzer avers that he did not consent to the disclosure of his appraisal report to appellant.
 {¶ 13} Negligence Claim. "The existence of a duty in a negligence action is a question of law for the court." Adelman v. Timman (1997),117 Ohio App.3d 544, 549. "Whether a duty exists depends largely on the foreseeability of the injury to one in the plaintiff's position. Only when the injured person comes within the circle of those to whom injury may be reasonably anticipated does the defendant owe him a duty of care." Id., citing Gedeon v. East Ohio Gas Co. (1934), 128 Ohio St. 335,338.
 {¶ 14} Appellant argues that Krupitzer owed him a duty to prepare an accurate appraisal. We disagree. Krupitzer did not prepare the appraisal for appellant. Krupitzer prepared the appraisal for American Home Mortgage in connection with the Fayeds' loan application.[2] In light of the express contract limitations on the persons to whom the appraisal could be disclosed, and Krupitzer's failure to consent to disclosure of the appraisal to appellant, Krupitzer could not have reasonably foreseen *Page 9 
that appellant, a subsequent purchaser of the property, would rely on his appraisal. Therefore, summary judgment was properly granted for Krupitzer and Krupitzer Associates on appellant's negligence claim.
 {¶ 15} Civil Conspiracy Claim. The elements of a civil conspiracy claim under Ohio law are: (1) a malicious combination of two or more persons, (2) resulting in injury to person or property, and (3) an unlawful act independent from the actual conspiracy. Berardi's FreshRoast, Inc. v. PMD Enterprises, Cuyahoga App. No. 90822, 2008-Ohio-5470, ¶ 45. In support of the "unlawful act" element of this claim, appellant exaggerates his tort claims against Krupitzer, arguing that Krupitzer's appraisal was not merely negligent, but fraudulent. However, Krupitzer made no representations to appellant: he did not authorize the disclosure of his appraisal to appellant. Therefore, appellant cannot demonstrate any unlawful act by Krupitzer.
 {¶ 16} Deceptive Trade Practices Claim. In his response to appellees' motions for summary judgment, appellant voluntarily dismissed his deceptive trade practices claim against Krupitzer.
 {¶ 17} We find the court properly granted summary judgment for Krupitzer and Krupitzer Associates on the civil conspiracy claim as well as the negligence claim.
BPJ Investments Co., Inc. and Potz
 {¶ 18} In his second assignment of error, appellant argues that the court improperly granted summary judgment for BPJ and Potz on his claims for breach of fiduciary duty and deceptive trade practices, because they did not request summary *Page 10 
judgment on these claims. He further asserts that the court erred by granting judgment on his negligence, fraud, and civil conspiracy claims.
 {¶ 19} Initially, we reject appellant's contention that BPJ and Potz did not request summary judgment on his claims for breach of fiduciary duty and deceptive trade practices. The motion filed by BPJ and Potz requested summary judgment on all claims against them. When appellant asserted that they had not addressed two claims, BPJ and Potz's reply explained the legal basis for their request for judgment on those claims. The grounds for judgment on the breach of fiduciary duty claim were the same as those asserted in the original motion with respect to appellant's negligence claim: that BPJ and Potz owed no duty to appellant because they were representing the Zayeds in the sale and were not acting on appellant's behalf. Hence, appellant was given the full opportunity to present evidence and argue this issue. Furthermore, Kirsch and American Home Mortgage had argued that appellant's claim under the Consumer Sales Practices Act failed as a matter of law because appellant was not a "consumer" involved in a "consumer transaction." Appellant also responded to this argument. Therefore, appellant cannot claim he was sabotaged by the reply brief. He did not seek leave to respond to the reply. Accordingly, we conclude that Potz and BPJ sought judgment on all claims against them.
 {¶ 20} Potz's deposition testimony shows that defendant Peter Moran approached Potz and suggested that Potz purchase the residence from the Zayeds and lease it back to them with an option for the Zayeds to purchase it. Moran *Page 11 
provided Potz with a copy of the second Krupitzer appraisal to use for purposes of obtaining financing. Potz applied for a loan, but was unable to obtain one. He then contacted appellant in early 2003 to determine whether he was interested in pursuing this transaction. The Zayeds agreed to pay Potz a commission if the sale occurred. Once the purchase agreement was executed, Potz was no longer involved with the transaction, although he did pick up rental payments from the Zayeds on appellant's behalf after the transaction was completed. Appellant's own deposition testimony indicates that he was aware that Potz represented the seller in this transaction, not appellant. Appellant was aware that Potz would receive a commission.
 {¶ 21} Breach of Fiduciary Duty. Appellant claims that Potz owed him a duty of fair dealing and loyalty arising out of their principal/agent relationship. He asserts Potz breached that duty by failing to disclose (a) his own business interest with Skliros, (b) the Zayeds' poor financial condition, and (c) the true value of the property was less than the appraised value.
 {¶ 22} This claim is founded on the existence of an agency relationship between the parties. "All that is required to form an agency relationship is consent by both parties." Mortgage Network, Inc.v. Ameribanc Mortgage Lending, LLC, 177 Ohio App. 3d 733;2008-Ohio-4112, ¶ 13. Thus, both the principal (appellant) and the agent (Potz) must have agreed that Potz would act as appellant's agent. The only evidence of an agency relationship is the fact that Potz approached appellant with this "opportunity." This fact alone does not tend to show that Potz consented to act as appellant's agent. Appellant testified that he was aware that Potz was acting as *Page 12 
the sellers' agent, not appellant's. Accordingly, Potz was entitled to judgment as a matter of law on appellant's claim for breach of fiduciary duty.
 {¶ 23} Negligence. The amended complaint asserted that Potz and BPJ breached a duty of care to appellant by failing to disclose (a) the existence of a dual agency, (b) the Zayeds' poor credit, (c) the multiple appraisals, and (d) his personal interest in a proposed business relationship with Skliros. As with his claim for breach of fiduciary duty, appellant's negligence claim relies upon the existence of an agency relationship to create a disclosure duty. Cf. ClevelandBluffs Dev., LLC v. A.J. Hai Sons (1922), LLC, Cuyahoga App. Nos. 89635 89674, 2008-Ohio-5148, ¶ 29. And as with his claim for breach of fiduciary duty, appellant presented no evidence that Potz or BPJ was acting as his agent. Therefore, they were entitled to judgment as a matter of law on appellant's negligence claim.
 {¶ 24} Fraud. "A claim of common-law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49. The amended complaint asserted that not only did Potz and BPJ fraudulently fail to disclose the matters listed above, but they also falsely represented *Page 13 
the value of the subject property and the Zayeds' willingness and ability to pay the rent plus property taxes and insurance.
 {¶ 25} Appellant's claim of fraudulent non-disclosure must fail for the same reason that his negligence and breach of fiduciary duty claims failed. Appellant cannot demonstrate a fraud claim based on a non-disclosure unless he first establishes a fiduciary relationship between the parties, and he has failed to do so. See ClevelandBluffs, 2008-Ohio-5148, at ¶ 43.
 {¶ 26} Appellant's claim of fraudulent representations stands on a different footing. Both Potz and appellant testified that Potz gave appellant the Krupitzer appraisal, which Potz himself had received from Moran. There is no evidence that Potz adopted the Krupitzer appraisal as his own, or represented to appellant that it correctly valued the property. Appellant testified that Potz and American Home Mortgage told him that it was a "valid appraisal," but there is no evidence that these parties knew that the appraisal was incorrect.[3] Therefore, appellant presented no evidence that Potz or BPJ made a false representation of fact regarding the value of the property.
 {¶ 27} There is no evidence that appellant relied on any information he received from Potz or BPJ about the Zayeds' ability to complete the transaction. Appellant testified that he "met with the [Zayed] family and also had seen their additional property." He also spoke with their attorney. He was convinced that "the equities and *Page 14 
funds coming were sufficient to take care of * * * refinancing this property at a later date." He also visited the Zayeds' stores and observed that "they had a good cash flow situation." Appellant's independent investigation belies his claim that he relied on Potz's representations.
 {¶ 28} Therefore, Potz and BPJ were entitled to judgment as a matter of law on the fraud claim.
 {¶ 29} Civil Conspiracy. As noted above, the elements of a civil conspiracy claim under Ohio law are: (1) a malicious combination of two or more persons, (2) resulting in injury to person or property, and (3) an unlawful act independent from the actual conspiracy. Berardi's FreshRoast, Inc. v. PMD Enterprises, Cuyahoga App. No. 90822, 2008-Ohio-5470, ¶ 45. Appellant cannot demonstrate that Potz or BPJ engaged in any unlawful act. Therefore, they were entitled to judgment as matter of law on the civil conspiracy claim.
 {¶ 30} Deceptive Trade Practices. Appellant's claim for "deceptive trade practices" is based on R.C. 1345.01 et seq., the Ohio Consumer Sales Practices Act. At the time of these transactions, the CSPA defined a consumer transaction as follows:
 {¶ 31} "`Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. `Consumer transaction' does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the *Page 15 
Revised Code, and their customers; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services."
 {¶ 32} "The Ohio Supreme Court held that this definition evidences the General Assembly's desire to exclude real estate from the scope of the act. See Shore W. Constr. Co. v. Skora (1991), 61 Ohio St.3d 45, 48, 572
N.E.2d 646." Ruschau v. Monogram Props., Warren App. No. CA2004-10-121,2005-Ohio-6560, ¶ 29. See, also, Heritage Hills, Ltd. v. Deacon (1990),49 Ohio St.3d 80. In any case, the CSPA applies only to transactions for purposes that are primarily personal, family or household. Appellant purchased this property for an investment, not for personal, family, or household purposes. Therefore, the CSPA does not apply here, and Potz was entitled to judgment as a matter of law on this claim.
American Home Mortgage and Kirsch.
 {¶ 33} The third assignment of error challenges the award of summary judgment to American Home Mortgage and Ira Kirsch on appellant's claims for negligence, breach of fiduciary duty, civil conspiracy, deceptive trade practices, and unjust enrichment. American Home Mortgage was the mortgage broker who arranged for appellant's mortgage through Washington Mutual Bank, and who had attempted to arrange for financing for the Zayeds. By affidavit, Kirsch averred that he was the owner and president of Kirsch Associates, Inc., doing business as *Page 16 
American Home Mortgage. Kirsch further averred that American Home Mortgage served as an independent contractor in brokering the loan for appellant, and was not appellant's agent.
 {¶ 34} Negligence. Appellant's negligence claim against American Home Mortgage and Kirsch alleged that these defendants breached a duty of care to him by failing to disclose that the Zayeds had poor credit and by failing to investigate builder Skliros's lien on the property. Appellant does not demonstrate the source of this alleged duty of care. Even if we assume that American Home Mortgage was acting as appellant's agent[4] in obtaining financing for his purchase of the property, the scope of this agency did not include investigating liens on the property or advising appellant about the viability of a separate transaction between appellant and the Zayeds. "An agent owes his principal a duty to disclose all material information which the agent learns concerning thesubject matter of the agency relation and about which the principal is not apprised." Miles v. Perpetual Savings Loan Co. (1979),58 Ohio St.2d 93, 95 (emphasis added). The matters which appellant asserts that Kirsch and American Home Mortgage should have disclosed were not within the subject matter of the agency. *Page 17 
 {¶ 35} Appellant's brief on appeal refers to alleged acts of intentional misconduct, including a claim that American Home Mortgage and Kirsch submitted forged documents to Washington Mutual, directed the closing officer to falsify documents to comply with Washington Mutual's requirements, and solicited false appraisals. These allegations go far beyond the extensive facts already alleged in the amended complaint, and do not support a negligence claim. Accordingly, we decline to address them.
 {¶ 36} Breach of Fiduciary Duty. Appellant's claim for breach of fiduciary duty against Kirsch and American Home Mortgage fails for the same reason that his negligence claim fails. Even if these defendants were appellant's agents for the purpose of obtaining financing, appellant has not demonstrated how the disclosures he believes these defendants should have made fell within the scope of the agency. SeeMiles, 58 Ohio St.2d at 95. Therefore, the court properly granted summary judgment for Kirsch and American Home Mortgage on this claim.
 {¶ 37} Civil Conspiracy. In support of his civil conspiracy claim, appellant now contends that there was a conspiracy among Moran and Kirsch, pursuant to which Moran submitted forged documents to Washington Mutual for the purpose of obtaining a commission which he would split with Kirsch, as principals of American Home Mortgage. Appellant did not make this argument in the trial court. Accordingly, we decline to address it.
 {¶ 38} In the common pleas court, appellant urged that Kirsch's financial interest in the fees which this transaction would generate somehow demonstrated *Page 18 
that he was "part of the common design to have [appellant] enter into a purchase agreement for a property, at an overinflated price, such price being necessary to cover the outstanding liens on the property." The fee American Home Mortgage obtained for its services does not imply, much less prove, that it or Kirsch committed any unlawful act. Therefore, there is no evidence to support appellant's civil conspiracy claim against Kirsch or American Home Mortgage.
 {¶ 39} Deceptive Trade Practices. As noted above, this claim is, in reality, a claim under the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. Appellant contends that this Act expressly applies to transactions among mortgage brokers and their clients in connection with residential mortgages. The amendment by which mortgage broker transactions were expressly included under the CSPA became effective January 1, 2007, long after this transaction was complete and, indeed, long after this action was filed.
 {¶ 40} We have already discussed the operative definition of a consumer transaction in connection with appellant's claims against Potz and BPJ. There is conflicting case law as to whether this definition applies to the services of a mortgage broker. See Guth v. Allied HomeMtge. Capital Corp., Clermont App. No. CA2007-02-029, 2008-Ohio-3386. Regardless, however, the CSPA only applies to transactions that are primarily for personal, family, or household purposes. The purpose of this transaction was investment. Therefore, the CSPA does not apply.
 {¶ 41} Unjust Enrichment. In the amended complaint, appellant asserts that Kirsch and American Home Mortgage were unjustly enriched by their receipt of *Page 19 
commissions and fees based on a mortgage/loan contract which he claims was fraudulently procured. To prove an unjust enrichment claim, the plaintiff must prove that he conferred a benefit on the defendant, that the defendant had knowledge of that benefit, and that the defendant's retention of that benefit would be unjust under the circumstances.Hambleton v. R.G. Barry Corp. (1994), 12 Ohio St.3d 179, 183.
 {¶ 42} The equitable doctrine of unjust enrichment does not apply when a contract actually exists. Alternatives Unlimited-Special, Inc. v. OhioDept. Of Edn., Franklin App. No. 08AP-396, 2008-Ohio-6427, ¶ 23. To the extent that appellant conferred a benefit on Kirsch and American Home Mortgage, this benefit was conferred by a contractual relationship between the parties pursuant to which Kirsch and American Home Mortgage arranged for a mortgage for appellant in exchange for a fee. This contractual relationship precludes recovery by appellant under an unjust enrichment theory. Appellant did not allege a fraud[5] which might render this contract voidable. Ullman v. May (1947), 147 Ohio St. 468,478. Therefore, they were entitled to judgment as a matter of law on the unjust enrichment claim.
Patriot Title. *Page 20 
 {¶ 43} In his fourth assignment of error, appellant contends that the court erred by granting summary judgment in favor of Patriot Title, the escrow agent, on his claims for negligence, civil conspiracy, and deceptive trade practices.
 {¶ 44} Deceptive Trade Practices. As discussed above, the purpose of this transaction was not primarily for personal, family, or household purposes. Therefore, the CSPA does not apply, and the court properly granted summary judgment in favor of Patriot on the Deceptive Trade Practices claim.
 {¶ 45} Negligence. The amended complaint asserted that Patriot was negligent in a number of respects. On appeal, appellant has limited his argument to the contention that Patriot had a duty of care to "act in his best interest, and keep him apprised of developments on the sale," including information on liens on the property.
 {¶ 46} "An escrow agent `is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands.' * * * The escrow agent owes the parties a duty `to carry out the terms of the agreement as intended by the parties.'" Hurst v. EnterpriseTitle Agency, 157 Ohio App.3d 133, 2004-Ohio-2307, ¶ 40 (citations omitted). While the escrow agent is a fiduciary to both parties, the scope of his duties are limited by his limited role in the transaction. While he may have a duty to inform the parties about matters which affect the closing of the transaction, cf. Natale v. Baier (Oct. 9, 1984), Stark App. No. CA 6361, the escrow agent does not owe the parties a duty to inform them about all the facts and circumstances surrounding the transaction, as appellant contends. Appellant *Page 21 
concedes that he learned about these liens before closing, but closed the transaction anyway. Therefore, he cannot demonstrate that his alleged injury was caused by Patriot's negligence in failing to inform him about the liens. There are no genuine issues of material fact, and Patriot was entitled to judgment as a matter of law on the negligence claim.
Civil Conspiracy .
 {¶ 47} Appellant contends that there is evidence of a conspiracy among American Home Mortgage and Patriot. There is no evidence of any
 {¶ 48} unlawful act by either American Home Mortgage or Patriot, however, so the court properly granted summary judgment to Patriot on this claim.
Economic Loss Doctrine.
 {¶ 49} Appellant's final assignment of error asserts that the court erred by finding his recovery was barred by the "economic loss doctrine." We have determined that summary judgment in this matter was appropriate on other grounds. Therefore, this assignment of error is moot.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 22 
SEAN C. GALLAGHER, P.J., and MELODY J. STEWART, J., CONCUR.
[1] Appellant's claims against Thomas Skliros were dismissed with prejudice, as were Skliros's counterclaims against appellant. Appellant further voluntarily dismissed, without prejudice, his claims against Ashraf Zayed, Mahoud Zayed, Layali Ibrahim, Fared Zayed, Nadia Zayed, Shadi Abdelwahab, and Al Manar Market; defendants Ashraf Zayed, Mahoud Zayed, and Layali Ibrahim dismissed their counterclaims against appellant, without prejudice. Appellant was granted judgment separately against Peter Moran; this judgment is not at issue in this appeal.
[2] This fact alone distinguishes this case from Washington Mut. Bankv. Smith, Lake App. No. 2001-L-238, 2002-Ohio-6910. The plaintiffs in that case were the borrowers on the loan in connection with which the appraisal was made; the court determined that the plaintiff was in the limited class of persons who the appraiser could foresee would rely on the appraisal. In this case, however, the Fayeds' loan was never consummated. Appellant, a subsequent purchaser, claimed he relied upon the appraisal for the earlier, failed, transaction.
[3] We cannot credit appellant's unsupported testimony that he believed that Potz was "aware of the true valuation of the property." This is supposition, not evidence.
[4] Kirsch's averment, by affidavit, that American Home Mortgage acted as an independent contractor and not as appellant's agent is a legal conclusion, not a statement of fact. Therefore, we cannot rely upon it as evidence of the relationship between the parties. On the other hand, appellant also did not present any evidence of the nature of the relationship between the parties. The record thus leaves us with a question of fact whether American Home Mortgage was appellant's agent. This question of fact is not material, however, because it still does not establish the kind of duty appellant seeks to impose on American Home Mortgage and Kirsch.
[5] The amended complaint asserted that these defendants obtained the mortgage/loan contract through fraud. In other words, appellant claims these defendants performed their contract with appellant through fraud. Absent a more detailed explanation of the alleged fraud, however, it is not immediately apparent how alleged fraud in the performance of the contract would allow appellant to rescind his contract with American Home Mortgage. In any event, appellant did not state the circumstances constituting the fraud with particularity in this or any other paragraph of the amended complaint. Civ. R. 9(B). *Page 1